UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD CARDINAL,

       Plaintiff,

v.                                  Case No. 2:06-cv-232
                                   HON. GORDON J. QUIST

LINDA METRISH,

       Defendant.

_____/

## OPINION AND ORDER APPROVING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court has reviewed the Report and Recommendation filed by the United States Magistrate Judge in this action on November 14, 2007. The Report and Recommendation was duly served on the parties. The Court has received objections from Plaintiff. In accordance with 28 U.S.C. § 636(b)(1), the Court has performed *de novo* consideration of those portions of the Report and Recommendation to which objection has been made. The Court now finds the objections to be without merit.

Plaintiff filed suit against Defendant, Linda Metrish, in her individual capacity for violations of the Eighth Amendment and in her official capacity for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et al.* Plaintiff was confined at the Hiawatha Correctional Facility ("HTF") and was a participant in the Kosher meal program. On March 2, 2005, Plaintiff was issued several misconduct charges and was placed in temporary segregation. Because HTF inmates can only be housed in temporary segregation for eight hours, Plaintiff was placed in temporary segregation at Kinross Correctional Facility (KCF). KCF does not serve Kosher meals, and Plaintiff refused the non-Kosher meals provided to him. After Plaintiff

refused meals for 72 hours, KCF segregation staff, pursuant to MDOC policy, notified Health Services on Saturday March 5, 2005, that Plaintiff was refusing meals.  Metrish, the warden of HTF and KCF, first learned on Monday March 7, 2005, that Plaintiff was refusing non-Kosher meals and that Kosher meals were not available at KCF.  On March 8, 2005, Plaintiff was transferred to Chippewa Correctional Facility where he could receive Kosher meals while placed in temporary segregation.

Plaintiff alleges that Metrish, in her individual capacity, violated the Eighth Amendment. Plaintiff also sued Metrish in her official capacity for violating the RLUIPA.  Metrish moved for summary judgment, and the magistrate issued a report and recommendation that the Court grant Metrish's motion for summary judgment on the Eighth Amendment claim.  For the RLUIPA claim, the magistrate recommended granting Metrish's motion because Metrish is immune from suit for monetary damages in her official capacity and because Plaintiff's claims involving equitable relief were mooted by his transfer to a new prison.  Plaintiff filed objections regarding both conclusions.

*RLUIPA*

The RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1)     is in furtherance of a compelling governmental interests; and
>
> (2)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.  Regarding relief, the statute states that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).

- 2 -

The issue of liability under the RLUIPA remains unresolved in many courts. Courts are split on whether the RLUIPA provides a cause of action against governmental employees in their individual capacity. *Smith v. Allen*, 502 F.3d 1255, 1272 (11th Cir. 2007) (collecting cases); *Madison v. Virginia*, 474 F.3d 118, 130 n. 3 (4th Cir. 2006) (collecting cases). It is unnecessary for the Court to resolve this issue because Plaintiff withdrew his RLUIPA claim against Metrish in her individual capacity. However, Plaintiff's claim against Metrish in her official capacity is a source of debate as well. Courts are split on whether a plaintiff may sue an individual in his or her official capacity for monetary damages under the RLUIPA. *Compare Smith*, 502 F.3d 1255 (holding that the RLUIPA contains a waiver of sovereign immunity for monetary damages claims), *and Price v. Caruso*, 451 F.Supp.2d 889 (E.D. Mich. 2006) (same), *with Madison*, 474 F.3d 118 (holding that the RLUIPA contains a waiver of sovereign immunity but that the waiver does not extend to monetary damages).

Suits against state officials in their official capacity are treated as suits against the State. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361 (1991). As such, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id.*, 112 S.Ct. at 362. Metrish argues that Plaintiff's claim for monetary relief against her in her official capacity is barred by the Eleventh Amendment. Plaintiff, relying on *Price*, 451 F.Supp.2d at 902, responds that the State waived its sovereign immunity by accepting federal funds conditioned on waiver. Plaintiff is correct that "if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145 (1985). However, courts "will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no

room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464 (1909)).

The statute specifically provides that a person may "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The statute defines government to include states, state agencies, and any other person acting under color of state law. 42 U.S.C. § 2000cc-5(4). Therefore, the RLUIPA creates a cause of action against the State, and "[b]y voluntarily accepting federal correctional funds, it consented to federal jurisdiction for at least some form of relief." *Madison*, 474 F.3d at 130. Thus, the Court agrees with both the Fourth and Eleventh Circuits that states have waived their sovereign immunity, in some form, for causes of action under the RLUIPA.

However, the difficult and divisive question is whether that waiver extends to monetary damages. This is because "[a] waiver of sovereign immunity for some type of remedy does not necessarily extend to suits for damages." *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006). The Supreme Court has articulated several principles for a court to consider when determining whether a waiver of sovereign immunity extends to monetary damages. First, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 2096 (1996). Second, "the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.* at 193, 116 S.Ct. at 2097. Third, legislative history is immaterial because "the 'unequivocal expression' of elimination of sovereign immunity that [the Court] insist[s] upon is an expression in the statutory text." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37, 112 S.Ct. 1011, 1016 (1992). Thus, if a waiver of sovereign immunity is susceptible to multiple interpretations – one which includes

monetary damages and one which does not – the waiver does not extend to monetary damages. *See Id.*, 112 S.Ct. at 1016.

The statute provides that a person may bring a cause of action against the government and obtain "appropriate relief." 42 U.S.C. § 2000cc-2(a). The term "appropriate relief" is susceptible to various interpretations. It is possible to interpret "appropriate relief" to cover all types of relief – both equitable and monetary. "However, another plausible reading is that 'appropriate relief' covers equitable relief but not damages, given Congress's awareness of the importance of sovereign immunity and its silence in the statute on the subject of damages." *Webman*, 441 F.3d at 1026 (construing same phrase contained in the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb, *et al.*). Because this provision is amenable to multiple interpretations which may or may not include monetary relief, the phrase "appropriate relief" is not the type of unequivocal waiver of immunity from monetary damages required. *Madison*, 474 F.3d at 132.

Moreover, the Court is not convinced by the Eleventh Circuit's argument in *Smith*. The *Smith* panel relied on the Supreme Court's opinion in *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028 (1992). In *Franklin*, the Supreme Court construed what remedies were available for violations of Title IX. The Court reiterated, and relied on, the traditional presumption that courts "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* at 66, 112 S.Ct. at 1032. This presumption was in favor of both injunctive and monetary relief. *Smith*, 502 F.3d at 1270. Thus, according to the *Smith* court, because Congress did not specifically exclude monetary damages for violations of the RLUIPA, the term appropriate relief must include them. *Id.* This analysis, however, fails to account for one crucial difference: context. The Supreme Court in *Franklin* was engaging in pure statutory interpretation separate and distinct from any considerations of sovereign immunity. Thus, the Court was neither bound by nor

influenced by the principle that waivers of sovereign immunity must be strictly construed in favor of immunity and that waivers must be unequivocal.  A generally applicable presumption of statutory interpretation loses its relevance when confronted with contrary principles of law specific to the issue at hand.  In the context of waivers of sovereign immunity, those principles are clear:  the waiver must unequivocally extend to monetary damages.

Because the RLUIPA does not contain an unambiguous waiver of sovereign immunity for monetary damages, Plaintiff may not state a claim for monetary damages against Metrish for violations of the RLUIPA.  Additionally, Plaintiff's claims for equitable relief are moot because Plaintiff has been transferred from the prison where the incident occurred.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  Thus, the Court will grant summary judgment in Metrish's favor on Plaintiff's RLUIPA claims.

*Eighth Amendment*

Plaintiff also sued Metrish in her individual capacity for violations of the Eighth Amendment.  The Eighth Amendment provides a prisoner with the "right not to have prison officials act with deliberate indifference to his health and safety." *LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th Cir. 2001).  However, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,  511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

The magistrate recommends that the Court grant summary judgment in Metrish's favor because there is no evidence demonstrating that Metrish was aware of Plaintiff's situation.  Metrish was not aware that Plaintiff was refusing meals because they were non-Kosher until Monday March

7, 2007.  Upon learning of this, Metrish immediately transferred Plaintiff to a facility that could accommodate his dietary needs.  Thus, Metrish neither knew of nor disregarded an excessive risk to Plaintiff's health or safety.  Therefore, Plaintiff cannot prevail in his Eighth Amendment claim against Metrish.[1]

**Conclusion**

Plaintiff's claim under the RLUIPA for injunctive relief is moot because Plaintiff has been transferred.  His claim for damages against Metrish in her official capacity for violating the RLUIPA is barred by sovereign immunity.  Finally, the Court grants summary judgment in Metrish's favor on Plaintiff's Eighth Amendment claim because there is no genuine issue of material fact that Metrish was aware of and disregarded an excessive risk to Plaintiff's health and safety.  Therefore,

**IT IS HEREBY ORDERED** that the Report and Recommendation of the Magistrate Judge (docket no. 33) is **APPROVED AND ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (docket no. 22) is **GRANTED**.

**This case is concluded.**

Dated:  March 13, 2008                                    _____/s/ Gordon J. Quist_____
                                                                      GORDON J. QUIST
                                                                      UNITED STATES DISTRICT JUDGE

---

[1]Plaintiff also argues that with further discovery he could prove Metrish was aware that he was refusing meals sooner.  However, this assertion appears to be unfounded and is rebutted by the evidence, including an affidavit from Metrish.